Welch, Richard E., J.
Introduction
This is a sad case that demonstrates the unduly harsh effects of minimum mandatory drug sentences. The defendant Virginia Crowley was convicted of possession of heroin with intent to distribute having a weight in excess of 100 grams. The minimum mandatory sentence for such a crime is ten years in a State penitentiary. That sentence was imposed after the jury found the defendant guilty.
This was the defendant’s first criminal offense. She was the smallest of the fish involved this drug transaction. She was the much-abused girlfriend of one Mr. Angel Lopez who had arranged this drug deal. Mr. Lopez was indicted on federal charges in connection with this and other illegal drug transactions. The federal authorities left Ms. Crowley to the State to prosecute. Ironically, had she been prosecuted under the federal drug laws she likely would have received a much more lenient sentence.
At the time Ms. Crowley was convicted she had recently learned that she was pregnant. She has since delivered a healthy baby boy in prison. Prior to her trial, she was offered very reasonable plea agreement offers by the Assistant District Attorney. Both of her trial counsel, first a Ms. Susan Oker and later a Mr. Russell Sobelman, fully discussed these offers with Ms. Crowley. Mr. Sobelman, in particular, emphasized that her options were spending 3 years in jail if she pled guilty pursuant to the Commonwealth’s offer, or if she was convicted after trial, she would face a minimum ten years in prison. Ms. Crowley repeatedly rejected the plea agreement offers. She insisted, and continues to insist, that she is not guilty of these charges. She stated at trial, and continues to maintain, that she did not know what was in the baseball-sized object that she handed to an undercover police officer and she did not know that there was money in the paper bag that the undercover police officer handed to her and that she later returned to her boyfriend Angel Lopez.
She now claims that she was in a confused psychological state in the two months prior to trial and that a new trial should be ordered to prevent a miscarriage of justice. Unfortunately, there is no legal or factual basis for a new trial and this motion must be denied.
Background and Findings
Virginia Crowley, who had been a subject of physical and mental abuse for much of her life, was arrested on these charges in 1999 and released on bail. Initially she was represented by Attorney Susan Oker. This court is familiar with Attorney Oker. She is an extremely experienced and competent criminal defense attorney.
At the time of her arrest, the defendant had not yet been evaluated by any psychiatrist or psychologist. She was not on any medication. She was holding down a full-time job at Burger King. She had completed the 10 th grade but had not yet graduated from high school. She was 18 years old.
Attorney Oker arranged to have Ms. Crowley medically evaluated by the Psychiatric Group of the North Shore. See Exhibit B of Defendant’s Motion. During the evaluation, Ms. Crowley was found to be “alert and oriented, tearful throughout the interview, depressed and anxious mood in effect.” It is noted that she was “very depressed and anxious over the possible jail sentence.” She was diagnosed as suffering from depression and post-traumatic stress disorder. She was provided various medications to deal with her anxiely.
Later, Attorney Oker arranged to have Ms. Crowley evaluated by a Dr. Priscilla Hoffnung (on August 30, 2000). Dr. Hoffnung, a clinical psychologist, primarily evaluated Ms. Crowley in relation to her prospective trial defense. She concluded her evaluation: “Argua *632 bly, her unwitting participation in criminal activities was a result of her obedience to her lover’s demands, reenforced by his past violence and threats of abandonment." Dr. Hoffnung does evaluate Ms. Crowley’s psychological function during this period of time. She notes that Ms. Crowley “is emotional and cried often during the interview. She is fearful of the outcome of her legal matters and she cannot bear incarceration. Her level of function is more characteristic of a 12-year-old child then a 19-year-old young woman. Her emotional immaturity was also noted by each of her family members with whom I had a conversation. When Ms. Crowley cannot get her way, she has temper tantrums and emotional outbursts.” Later in 2002, Ms. Crowley was diagnosed with suffering from bipolar disorder and post-traumatic distress disorder. (See Exhibit B of Defendant’s Motion.) At no time did any doctor or mental health professional determine that Ms. Crowley was not competent to stand trial and no one offered the opinion that she was incapable of forming the requisite intent to commit the crime charged.
While Attorney Oker was representing Ms. Crowley, the Assistant District Attorney made an offer of a possible plea bargain. The Assistant District Attorney, acting in a responsible and compassionate way, offered to reduce the charges from the minimum mandatory 10 years for possession of heroin with intent to distribute in an amount of over 100 grams to a lesser charge whereby Ms. Crowley would serve 4 years in jail. Ms. Crowley rejected this offer insisting that she was innocent and that she could not go to jail.
Sometime in 2001, Attorney Sobelman began to represent Ms. Crowley. Attorney Russell Sobelman is also a highly experienced, competent and successful criminal defense counsel. Attorney Sobelman met with Ms. Crowley at his office on numerous occasions to discuss the decision to plea guilty or go to trial. In addition, Attorney Sobelman carefully reviewed with Ms. Crowley the facts of the case and rehearsed her possible trial testimony. During these meetings, Ms. Crowley was usually accompanied by her mother or grandmother.
At almost every meeting with Attorney Sobelman, there would come a point during the meeting when Ms. Crowley would ciy and lose her composure. This particularly occurred when there was a discussion of the possibility of her going to prison. Sometimes Attorney Sobelman would be required to suspend the meeting in order for Ms. Crowley to compose herself. Ms. Crowley was able to compose herself and would not ciy during the entire meeting. She was a more emotional client then most that Attorney Sobelman has represented. Attorney Sobelman never knew that the defendant was prescribed medication or taking medication. He never observed any difference during his meetings with Ms. Crowley either during the time she was on medication or the period when she claimed that she stopped taking her medication.
Attorney Sobelman had no concern regarding the defendant’s mental status. He certainly was not concerned about her competency to stand trial or any possible lack of criminal responsibility. He was concerned about the defendant’s “high degree of emotion.” Indeed, eveiy time the subject of a possible plea agreement arose, and it came up often, the defendant would have an emotional outburst and claim that she could not go to jail.
On numerous occasions (certainly more than three) Attorney Sobelman discussed the possibility of a plea agreement with Ms. Crowley at this office. He explained that the Assistant District Attorney had provided a more lenient proposed sentence of three years incarceration. He explained to Ms. Crowley, well before the trial in this matter, that the choice was between three years in jail on a plea or the possibility of the minimum mandatoiy sentence of 10 years after trial if she was found guilty. Attorney Sobelman had no question that, despite the fact that she was crying, he was able to communicate with Ms. Crowley. I credit Attorney Sobelman’s testimony, and do not find Ms. Crowley’s contrary testimony credible. She was fully aware of her options; namely she could have accepted the plea agreement of 3 years or face the possibility of 10 years minimum sentence which could not be altered by the judge should she be found guilty after trial.
Ms. Crowley’s response to Attorney Sobelman’s explanation of the possible plea agreement did not vary over time. This matter was discussed with her on multiple occasions, the fair implication of being at least several months before the trial. Ms. Crowley’s response was always that she was innocent, that she did not know the content of what she handed to the undercover officer or what that officer had handed to her. She also insisted that she could not go to jail. Thus, she repeatedly rejected this plea agreement. The defendant’s mother and/or grandmother were with her during these discussions.
In late July of 2002, Ms. Crowley determined from a home pregnancy test that she was pregnant. This was confirmed by a medical evaluation in August. She did not disclose that she was pregnant to Attorney Sobelman prior to trial. Ms. Crowley had been taking various anti-anxiety and anti-psychotic medications before she learned that she was pregnant. She promptly ceased using those medications once she learned of her pregnancy. She did not tell her attorney that she had ceased using the medications. Ms. Crowley testified that during the two months preceding the trial (the period of time when she ceased using her medication) she had “racing thoughts, wicked bad anxiety, a hard time thinking and was unable to sleep.” She also testified that, once pregnant, she thought constantly about the future of her child in a fearful *633 way. She also stated that she was an emotional wreck when she met with Attorney Sobelman on various occasions during the period six to eight weeks prior to trial.
I do not credit all of Ms. Crowley’s statements regarding her emotional state. I do credit so much of her testimony that her anxiety level increased in the six to eight weeks prior to trial, that she ceased taking her medication, that she became more emotional during that period of time, and that she was consumed by thoughts of the well being of her future child. I also credit her testimony that she did not reveal her pregnancy or her cessation of medication to her attorney. Still, there is no indication that she could not understand what was occurring during the six to eight weeks prior to trial. She fully understood her options of pleading guilty, or taking the chance of going to trial and facing the minimum mandatoiy sentence of 10 years. Again, I do not credit her testimony that she did not understand that she faced a minimum of 10 years if she was convicted, a sentence which could not be altered by the trial judge. Although she was very emotional, she could calm down and discuss her trial testimony in detail with Attorney Sobelman. She continued to insist that she was innocent and would not accept any plea agreement that would send her to jail. In short, she intentionally and rationally took an all-or-nothing position. She would not voluntarily go to jail and continued to believe that she was innocent, and hoped and believed that she would be found not guilty at trial. There is no indication that she was not competent to stand trial or to make the decision as to whether to accept a plea agreement or go to trial.
This conclusion is reinforced by Virginia Crowley’s behavior at trial. She took the stand and testified in a very coherent and rather persuasive fashion. She was not overly emotional during her testimony. This judge has reviewed all of Virginia Crowley’s testimony and it has refreshed my recollection of her conduct, attitude and awareness during the trial. She was alert, orientated, and coherent throughout the trial. Her attorney represented her well with perhaps the best possible defense given the Commonwealth’s strong case; le., she did not know that the object handed to her by her lover contained an illegal narcotic and she was just doing the bidding of the abusive man she loved. Her forceful and extensive testimony at trial was fully consistent with this well planned — albeit unsuccessful — defense. Her testimony was extensive and coherent. She exhibited no confusion and appeared alert and intelligent throughout. This can be said for her conduct during trial and there is no reason to think that her conduct before trial was anything but alert, intelligent and coherent.
Conclusion
There is no doubt that a ten-year sentence for this young woman is extremely harsh. In our democracy this was a decision made by the legislature when it enacted the mandatoiy minimum drug sentences. The defendant was fully aware of the mandatory minimum nature of the sentence that she faced and she elected to gamble with her chances of success at trial. One can certainly criticize a system that penalizes someone for asserting their innocence and paying the price of a minimum mandatoiy sentence which cannot be alleviated in any way by a judge. One might ask, why should one ever have to gamble by asserting their innocence if the purpose of a criminal trial is the pursuit of real justice? This, however, is the system that has been chosen by the legislature and the United States Supreme Court has ruled such a sentencing system constitutional. The harshness of the result provides no basis to allow a motion for new trial. Thus, the motion must be denied.